UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LASALLE SYSTEMS LEASING INC.,<br>an Illinois corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No.** |
| | ) | FILED: APRIL 14, 2008 |
| BEST REST MOTEL, INC., a California | ) | 08 CV 2116   JH |
| Corporation, d/b/a COMFORT INN AIRPORT AT | ) | JUDGE KENDALL |
| OLD TOWN, | ) | MAGISTRATE JUDGE NOLAN |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, LaSalle Systems Leasing, Inc. ("LaSalle"), for its Complaint against Defendant Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town ("Best Rest"), alleges and states as follows:

**PARTIES**

1.    Plaintiff LaSalle is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 6111 North River Road, Rosemont, Illinois.  LaSalle is a citizen of Illinois.

2.    On information and belief, Defendant Best Rest is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 1955 San Diego Avenue, San Diego, California.  Best Rest is a citizen of California.

**JURISDICTION AND VENUE**

3.    This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332.  This is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4.    Personal jurisdiction exists over Best Rest because Best Rest consented to this Court's jurisdiction when it executed the Master Lease Agreement that forms the basis of this Complaint (the "Master Lease Agreement"). A copy of the Master Lease Agreement is attached hereto as Exhibit A.

5.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a), as a substantial portion of the events giving rise to Plaintiffs' action arose in this District; in particular, the Master Lease Agreement was drafted, negotiated and entered into between the parties in Rosemont, Illinois, and the Master Lease Agreement specifies that Illinois law shall govern.

## COUNT I - BREACH OF CONTRACT

6.    LaSalle is a commercial equipment lessor that provides, among other things, financing of equipment and other personal property selected by LaSalle's customers, by providing triple net equipment leases to LaSalle's customers for the equipment that those customers seek to acquire and use in their businesses.

7.    On or about April 18, 2007, LaSalle and Best Rest entered into the Master Lease Agreement. The Master Lease Agreement governs the rights and obligations of the parties with respect to equipment leases entered into between LaSalle as lessor and Best Rest as lessee. The Master Lease Agreement contemplates the execution of Schedules that describe the particulars of any lease of specific equipment, including the lease term, the rental payment, the location, the schedule commencement date, and any additional required information.

8.    On or about July 1, 2007, LaSalle and Best Rest executed Schedule No. 001 to the Master Lease Agreement ("Schedule 001"). A copy of Schedule 001 is attached hereto as Exhibit B. Schedule 001 becomes part of the Master Lease Agreement and incorporates the

terms of the Master Lease Agreement.  Schedule 001 and the Master Lease Agreement are herein referred to collectively as the "Lease."

9.    The Lease constitutes a valid and enforceable contract between LaSalle and Best Rest.

10.    On information and belief, Best Rest entered into the Lease in order to lease equipment that Best Rest required in connection with a Service Agreement between Best Rest and Innovative Network Technologies, Inc. ("InnNetwork"), a Nevada corporation.  Best Rest selected the Equipment, including computer processors and high-definition televisions and accessories.  Best Rest selected LaSalle from a list of suggested vendors to provide Best Rest with a lease for the Equipment.  LaSalle has no common ownership with InnNetwork and is not party to, or bound by, the Service Agreement.

11.    Under the terms of the Lease, LaSalle agreed to lease to Best Rest, and Best Rest agreed to lease from LaSalle, the technology equipment selected by Best Rest and to be acquired by LaSalle (the "Equipment"), as identified in Schedule 001.  The Lease specifies that it shall remain in effect for a term of 48 months and that the amount of each monthly rental payment is $6,555.00.

12.    The Lease further provides that Best Rest shall reimburse LaSalle for taxes, and that such taxes shall be added to the rental payment.  The monthly taxes are $508.02.  The total monthly amount due, calculated as the monthly rental payment plus monthly taxes, is $7,063.02.

13.    Prior to June 1, 2007, the Equipment was delivered to Best Rest and installed at Best Rest's location. By executing Schedule 001, Best Rest certified that it had received, inspected, and accepted the Equipment.

14.    Pursuant to the Lease, Best Rest was and is obligated to make monthly payments

in the amount of $7,063.02. Best Rest has failed to pay LaSalle the monthly rent payments that were due on January 1, 2008, February 1, 2008, March 1, 2008, and April 1, 2008.

15.    In Paragraph 20 of the Master Lease Agreement, the Lease contains a provision entitled "Events of Default; Remedies," which provides, in relevant part:

> (a) Events of Default.  Occurrence of any of the following events or conditions shall constitute an Event of Default hereunder:
>     (1) Lessee's failure to pay, when due, and within 10 days after Lessor gives Lessee notice of such failure, any installment of Rent, including additional Rent, due under this Lease or any Schedule.

16.    As required by the terms of the Lease, on April 3, 2008, LaSalle provided Best Rest with notice of Best Rest's failure to pay rent for the period of January through April of 2008 (the "Notice of Default"). A copy of the Notice of Default is attached hereto as Exhibit C. The Notice of Default advised Best Rest that, as of April 3, 2008, Best Rest owed LaSalle $28,252.08 in overdue lease payments.

17.    Best Rest failed to pay the overdue lease payments within ten days as required by the Notice of Default and the Lease.

18.    Paragraph 20 of the Master Lease Agreement further provides:

> (b) Remedies.  Upon the occurrence of an Event of Default, Lessor may, without demand or notice of any kind, exercise one or more of the following remedies, as Lessor, in its sole discretion, lawfully elects:
>                                       * * *
>     (2) Terminate the applicable Schedule, whereupon all rights of Lessee in the Equipment subject to said Schedule will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee, if so requested, will at its expense promptly return the Equipment to Lessor at the place designated by Lessor within the Continental United States and in the condition required pursuant to the terms hereof . . . .  Lessee will, without further demand, forthwith pay Lessor an amount equal to any past due Rent and additional Rent which was due and payable for all periods up to and including the Rent payment date following the date on which Lessor has declared the Schedule to be in default, plus, as liquidated damages for the loss of a bargain and not as a penalty, an amount equal to the present value of the Rent which would otherwise have accrued from such rent payment date to the end of the term of the applicable Schedule ("Default

4

Value"). Such present value shall be computed utilizing a rate of 5% per annum.

19.    Following the expiration of the ten-day period, LaSalle hereby exercises its option to terminate the Lease.  LaSalle also hereby requests, pursuant to Paragraph 20(b)(2) of the Master Lease Agreement, that Best Rest return the Equipment, at Best Rest's expense and in the condition required by the Lease, to LaSalle Systems Leasing, Inc., 6111 North River Road, Rosemont, Illinois, 60018.

20.    LaSalle has fully performed under the Lease.

21.    Best Rest has breached the Lease by failing to pay LaSalle the amounts that were to be paid upon termination of the Lease, no further notice being required, under Paragraph 20(b)(2) of the Master Lease Agreement including: (a) $28,252.08, being the amount past due for all periods; and (b) $236,484.41, being the present value of the Rent which would otherwise have accrued to the end of the term of the applicable schedule.

22.    Best Rest, by refusing to pay the amounts due pursuant to Paragraph 20 of the Master Lease Agreement, has materially breached the Lease and has caused LaSalle damages in the principal amount of $264,736.49.

23.    Under the Master Lease Agreement, Paragraph 5(c), Best Rest is obligated to pay interest on all past-due amounts.  The interest on past-due amounts as of April 15, 2008 is $1,182.00.

24.    Under the Master Lease Agreement, Paragraph 20(c), Best Rest is obligated to pay all costs and expenses, including attorneys' fees, incurred by LaSalle in exercising any of its rights or remedies under the lease.

25.    Best Rest, by refusing to pay the amounts due, has materially breached the Lease and has directly and foreseeably caused LaSalle damages in the amount of $264,736.49, plus

accrued interest in the amount of $1,182.00, plus additional interest through time of judgment, plus LaSalle's attorneys' fees and costs.

WHEREFORE, Plaintiff LaSalle Systems Leasing, Inc., respectfully requests that this Court enter judgment in its favor and against Defendant Best Rest Motel Inc. in the amount of $264,736.49, plus accrued interest in the amount of $1,182, additional interest through time of judgment, attorneys' fees, and such further relief as this Court deems equitable and just.

Respectfully submitted,

**LASALLE SYSTEMS LEASING, INC.**

By: /s/ William M. McErlean
     One of Its Attorneys

William M. McErlean, ARDC #3122871
Jennifer A. Kimball, ARDC #6291184
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313

CHDS01 JKIMBALL 458662v1

# EXHIBIT A

ORIGINAL

# MASTER LEASE AGREEMENT #693

LESSOR:          **LaSalle Systems Leasing, Inc.**

ADDRESS:         6111 North River Road
                 Rosemont, IL 60018
                 (hereinafter referred to as "Lessor")

LESSEE:          Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town
                 (hereinafter referred to as "Lessee")

ADDRESS:         1955 San Diego Avenue
                 San Diego, CA 92110

AGREEMENT DATE:          April 18, 2007

THIS LEASE is a Master Lease Agreement by and between the Lessor and Lessee above named on the date above set forth. For and in consideration of the mutual covenants and promises hereinafter set forth, Lessor and Lessee hereby agree as follows:

1.   LEASE OF EQUIPMENT
Lessor hereby leases to Lessee, and Lessee hereby leases and agrees to take possession from Lessor, property acquired by Lessor and described in the Schedules hereto. Equipment and other property described in all Schedules as hereinafter defined are hereinafter referred to collectively as the "Equipment" and individually as an "Item of Equipment". A reference in this Lease to the Equipment shall be deemed to refer to all Equipment unless the reference is otherwise qualified.

2.   SCHEDULES
This Master Lease Agreement governs the rights and obligations of the parties with respect to the items of Equipment described on the Schedules hereto or which are executed by the parties hereafter and identified to this Master Lease Agreement (all of such Schedules are hereafter referred to collectively as the "Schedules"). The terms of each Schedule are subject to any and all conditions, stipulations, and provisions in this form lease. Each Schedule shall describe, with respect to the applicable items of Equipment, the Lease Term, Rental Payments, Location, Schedule Commencement Date, and such other information as may be required. Each Schedule is enforceable according to the terms and conditions contained therein and in the event of a conflict between the provisions of this Master Lease Agreement and the provisions of any Schedule, the provisions of the Schedule shall be controlling as to that Schedule. The term "Lease" as used herein means this form lease and all riders and exhibits thereto and each Schedule and all riders and exhibits thereto.

3.   LEASE TERM
The term of Lessee's lease of an Item of Equipment (the "Lease Term" with respect to such Item) shall be as follows:

The Lease Term shall commence on the Schedule Commencement Date described for such Item in the applicable Schedule.

The Lease Term for such Item of Equipment shall end on a date identified by either party hereto upon no less than 120 days' prior written notice to the other party; provided, however, that the Lease Term for an Item of Equipment may not be terminated prior to the minimum term specified in the applicable Schedule and may not be terminated unless the Lease Term for all Equipment is terminated.

4.   ACCEPTANCE
After the Equipment described on a Schedule has been installed, Lessee shall promptly advise Lessor that such Equipment is acceptable for use and shall accept such Equipment on behalf of Lessor by executing and delivering to Lessor a Certificate of Acceptance, identifying the applicable Items of Equipment and acknowledging, among other things, that such Equipment is in good order and in good operating condition and is of the manufacture, design, and capacity selected by Lessee. Lessee shall have no obligation with respect to any Item of Equipment hereunder unless and until a Certificate of Acceptance shall have been so executed and delivered by Lessee with respect to such Item of Equipment. When used equipment is leased, acceptance occurs upon the earlier of installation or seven (7) days after delivery of the equipment where the delay in installation is caused by Lessee.

5.   RENT
(a)  <u>Base Rent</u>. Lessee shall pay Lessor base Rent for the Equipment in the amounts and at the times set forth in the applicable Schedule. Rent shall be paid to Lessor at the address set forth at the beginning of this Lease or to such other person at such other address as Lessor may from time to time designate in writing.

(b)  <u>Additional Rent</u>. Lessee shall also owe to Lessor, as additional Rent, any and all charges, expenses, indemnities,

and other sums which become due by Lessee to Lessor under the terms of this Lease. Any such additional Rent shall be paid to Lessor within 30 days after the date that Lessor gives notice to Lessee that such additional Rent is due, unless a longer or shorter period is otherwise specified in this Lease.

(c)  <u>Interest</u>. If Lessee fails to pay to Lessor, within 10 days after the due date thereof (and without regard to whether Lessor has given Lessee notice of such failure or whether an Event of Default has occurred), any Rent or additional Rent due hereunder, then Lessee shall also owe to Lessor, as additional Rent, interest on such delinquent payment from the due date until paid at the maximum rate permitted by law, but in no event in excess of one and one-half percent (1 1/2%) per month.

(d)  <u>Rent</u>. "Rent" as used herein shall mean and include all Rent as provided in this Paragraph 5.

6.   LOCATION AND USE
Lessee agrees that the Equipment will be used solely in the conduct of Lessee's business and that each Item thereof will at all times be and remain in Lessee's possession and control at the place of installation shown in the applicable Schedule. The Equipment may not be moved to another location without Lessor's prior written consent; such consent shall not be unreasonably withheld but as a condition of such consent Lessor may request Lessee to execute, and Lessee shall execute, such Uniform Commercial Code ("UCC") financing statements as Lessor may reasonably require to perfect, or maintain the perfection of, Lessor's security interest in such moved Item of Equipment.

7.   LESSEE'S DUTY TO MAINTAIN AND REPAIR
Lessee shall, at its sole cost and expense, enter into, with the manufacturer or manufacturers of the Equipment or with another party satisfactory to Lessor, a maintenance agreement or agreements for all Equipment. Lessee shall have such a maintenance agreement or agreements in effect throughout the Lease Term. The Equipment shall at all times be used and operated in a careful and proper manner and in compliance with:

(a)  All applicable laws, ordinances, rules, and regulations.

(b)  All conditions and requirements of the policy or policies of insurance required to be carried under the terms of this Lease.

(c)  All manufacturer's instructions, maintenance and warranty requirements.

If compliance with the foregoing requires Lessee to make changes or additions to the Equipment, then such changes or additions shall be made by Lessee at its sole cost and expense. Lessee agrees that it has and assumes the sole duty to maintain the Equipment and shall not look to Lessor, or any assignee of Lessor's interest in this Lease, for such maintenance. Lessee, at its own expense, shall maintain and keep the Equipment in good repair, condition, and working order and shall furnish any and all parts, mechanisms, devices, and labor required to keep the Equipment in such condition.

8.   DECALS
If at any time during the Lease Term Lessor supplies Lessee with labels, plates, decals, or other markings stating that the Equipment is owned by Lessor or subject to a security or leasehold interest in favor of another party, Lessee shall affix and the same to, and keep the same prominently displayed on, the Equipment.

9.   LESSEE'S RIGHT TO QUIET ENJOYMENT OF THE EQUIPMENT
Lessor hereby covenants that so long as no Event of Default (as hereinafter defined) has occurred (unless the same shall have been corrected to Lessor's satisfaction), Lessee shall and may quietly have, hold, and enjoy the Equipment and every part thereof leased hereunder for the Lease Term, free from disturbance by Lessor or its officers, agents, employees, or assigns, or by anyone (whether the holder of a lien or otherwise) claiming solely by, through, or under

Lessor.

## 10. LESSOR'S RIGHT TO INSPECT
Lessor shall at any and all reasonable times during business hours have the right to enter into and upon the premises where an Item of Equipment may be located for the purpose of inspecting the Equipment or observing its use.

## 11. ALTERATIONS
Lessee shall not make any changes or additions to the Equipment which detracts from its economic value or utility. All changes, additions, and improvements to the Equipment shall belong to and immediately become the property of Lessor and shall be returned to Lessor with the Equipment upon the expiration or earlier termination of the applicable Schedule except that Lessee may remove and retain any readily detachable addition to the Equipment made and fully paid for by Lessee provided that:

(a) No Event of Default (as hereinafter defined) has occurred, unless the same shall have been corrected to Lessor's satisfaction.

(b) By such removal the Equipment is not rendered any less useful or valuable to Lessor than if such addition had not been made and later removed.

## 12. FEATURES AND EQUIPMENT ADDITIONS
Lessor agrees to purchase or otherwise obtain from the manufacturer of the prime unit included in the Equipment, or from other sources acceptable to Lessor, such Equipment features, field installed modifications, or standard system units ("Lease Additions") which Lessee may desire to add to or interface and connect with the Equipment. All such Lease Additions shall be and become Equipment subject to the terms of this Lease, and Lessor agrees to lease such Lease Additions to Lessee for the remainder of the Lease Term (as indicated in the appropriate Schedule), upon the same terms and conditions as are herein specified, at a rate to be negotiated between Lessor and Lessee.

Provided that Lessee complies with all other provisions of this Lease, including the requirements of Paragraph 11, and upon approval of Lessor, Lessee shall have the right at any time to add Lease Additions to the Equipment.

## 13. LOSS AND DAMAGES; STIPULATED LOSS VALUE
(a) Lessee's Assumption of Risk. Lessee hereby assumes and shall bear the entire risk of loss or damage to the Equipment from any and every cause whatever. No loss or damage to the Equipment or any part thereof shall affect any obligation of Lessee under this Lease. This Lease shall continue in full force and effect notwithstanding any such loss or damage.

(b) Notice of Loss or Damage. Lessee shall promptly advise Lessor in writing of any Item of Equipment lost or damaged, of the circumstances under which such loss or damage occurred, and of the extent of such loss or damage.

(c) Duty to Repair. Unless any item affected is lost or damaged beyond repair (referred to herein as a "Casualty Loss"), Lessee shall promptly replace any lost portion of such Item and fully repair and restore the Equipment to good repair, condition, and working order.

(d) Casualty Loss; Payment of Stipulated Loss Value. If the Equipment or any Item is a Casualty Loss, then:

    (1) Lessee shall pay Lessor in cash the Stipulated Loss Value thereof, calculated as set forth in the appropriate Schedule. Said Stipulated Loss Value shall be paid on the date of the first Rent installment due under the applicable Schedule which occurs at least 15 days after the date of the Casualty Loss.

    (2) Lessor shall be entitled to any net salvage value realized by Lessee from sale of the Item in excess of the Stipulated Loss Value, after deducting all reasonable salvage expenses.

    (3) Upon payment of the Stipulated Loss Value, and provided that no Event of Default (as hereinafter defined) has occurred, unless the same shall have been corrected to Lessor's satisfaction:

        (a) Lessee's obligation to pay Rent shall terminate with respect to such Item of Equipment.

        (b) Subject to Lessor's right to net salvage value, Lessee thereupon shall become entitled to such Item, as-is where-is, without warranty, express or implied, with respect to any matter whatever.

## 14. SURRENDER

Upon the expiration of the Lease Term or sooner termination of the applicable Schedule with respect to any Item of Equipment, Lessee shall (unless Lessee has paid to Lessor in cash the Stipulated Loss Value of such Item of Equipment pursuant to Paragraph 13) return at its expense the Item to a location designated by Lessor within the United States, in good repair, condition, and working order, and certified for manufacturer's maintenance by the manufacturer of the Equipment, except ordinary wear and tear from proper use alone, in the manner as specified by Lessor.

## 15. INSURANCE
Lessee shall keep each Item of Equipment insured against all risks of loss or damage from every cause whatever for not less than the current Stipulated Loss Value thereof, and shall carry public liability and property damage insurance covering the Equipment. All said insurance shall be in form and amount and with companies approved by Lessor, and shall be in the joint names of Lessor and Lessee. Lessee shall pay the premiums therefor and shall deliver or cause to be delivered to Lessor Certificates of Insurance. Each insurer shall acknowledge and agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Lessor that it will make payment of any claims in respect of the Equipment jointly to Lessee and Lessor for application in accordance with the terms of this Lease and give Lessor at least 30 days' written notice before the policy in question shall be altered or cancelled. The proceeds of such insurance, at the option of Lessor, shall by applied toward:

(a) The obligations of Lessee under Paragraph 13 to replace or repair the Equipment or pay the Stipulated Loss Value of the lost or damaged Items of Equipment thereof, or

(b) Payment or provision for satisfaction of the obligations of Lessee in default hereunder.

Any excess of such proceeds remaining shall belong to Lessor.

## 16. TAXES
In addition to the Rent provided in Paragraph 5 hereof, Lessee shall pay or reimburse Lessor for all taxes (exclusive of taxes based on Lessor's net income or franchise taxes, unless such net income or franchise taxes are in substitution for or relieve Lessee from any taxes which Lessee would otherwise be obligated to pay under the terms of this Paragraph or are imposed on or payable by Lessor solely by reason of the location of the Equipment), fees, charges, licenses, and assessments whatsoever, however designated, whether based on the Rent or levied, assessed, or imposed upon the Equipment or upon or in respect of the manufacture, purchase, delivery, ownership, leasing, use, or return of the Equipment, now or hereafter levied, assessed, or imposed during the term of the applicable Schedule under the authority of a federal, state, or local taxing jurisdiction, regardless of when and by whom payable. Applicable sales and use taxes will be added to the Rent unless Lessee provides direct payment authority or a valid exemption certificate.

## 17. LESSOR'S PAYMENT
In case of failure by Lessee to procure or maintain insurance or to pay fees, assessments, charges, taxes, and expenses, all as herein required, Lessor shall have the right, but shall not be obligated, to pay the premiums for such insurance and such fees, assessments, charges, taxes, and expenses. In that event, the cost thereof shall be additional Rent repayable to Lessor with the next installment of Rent.

## 18. DISCLAIMER OF WARRANTIES
(a) The following acknowledgments by Lessee are integral to this Lease and are made to induce Lessor to enter into and perform under this Lease:

    (1) THE EQUIPMENT IS OF A SIZE, DESIGN, TYPE, AND MANUFACTURE SELECTED BY LESSEE.

    (2) LESSOR IS NOT A MANUFACTURER OF THE EQUIPMENT.

    (3) LESSOR LEASES THE EQUIPMENT TO LESSEE, AND LESSEE HAS LEASED AND ACCEPTED THE EQUIPMENT FROM LESSOR, AS-IS.

    (4) LESSOR HAS NOT MADE AND DOES NOT HEREBY MAKE ANY AGREEMENT, REPRESENTATION, OR WARRANTY WITH RESPECT TO PATENTS OR THE MERCHANTABILITY, CONDITION, QUALITY OF THE EQUIPMENT, OR THE SUITABILITY OF THE EQUIPMENT FOR THE PURPOSES AND USES OF LESSEE, OR ANY OTHER AGREEMENT, REPRESENTATIONS, OR WARRANTY OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, IT BEING AGREED THAT ALL RISKS, WITH RESPECT TO PATENTS AND WITH RESPECT TO THE MERCHANTABILITY, CONDITION, QUALITY, AND

SUITABILITY OF THE EQUIPMENT ARE BORNE BY LESSEE.

(b) Lessor warrants that Lessor has the right to lease, or cause to be leased, the Equipment to Lessee under the terms of this Lease.  So long as no event of default has occurred and is continuing hereunder, Lessee shall have the right to obtain the benefit of and enforce in Lessee's own name and at Lessee's sole expense any supplier's or manufacturer's warranty or agreement in respect of the Equipment to the extent such warranty or agreement is assignable, and Lessor shall execute and delivery such instruments as may be reasonably necessary to enable Lessee to obtain such benefits.

## 19.  INDEMNIFICATION

Lessee does hereby assume liability for and does hereby agree to indemnify, protect, save, and keep harmless Lessor, and its successors and assigns, from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements, including court costs, attorney's fees, and other legal expenses, of whatever kind and nature, imposed on, incurred by, or asserted against Lessor or its successors and assigns (whether or not also indemnified against by any other person) in any way relating to or arising out of this Lease or the manufacture, purchase, ownership, delivery, lease, possession, use, operation, condition, return, or other disposition of the Equipment by Lessor or Lessee, including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee; any claim for patent, trademark, or copyright infringement; and any claims arising out of strict liability in tort.  Lessee agrees to give Lessor, and Lessor agrees to give Lessee, prompt written notice of any claim or liability hereby indemnified against.  The indemnities and assumptions of liabilities set forth in this Paragraph do not guarantee a residual value.

## 20.  EVENTS OF DEFAULT; REMEDIES

(a) Events of Default.  Occurrence of any of the following events or conditions shall constitute an Event of Default hereunder:

(1) Lessee's failure to pay, when due, and within 10 days after Lessor gives Lessee notice of such failure, any installment of Rent, including additional Rent, due under this Lease or any Schedule.

(2) Failure of Lessee to perform, within 10 days after Lessor gives Lessee notice of such failure (or, with respect to performance which cannot be completed in such time, failure to commence such performance within such time and to pursue such performance diligently thereafter) any other obligation, term, or condition of this Lease or any other agreement between Lessor and Lessee or under any agreement providing security for the performance by Lessee of its obligations hereunder.

(3) If any writ or order of attachment or execution or other legal process is levied on or charged against any Item of Equipment and is not released or satisfied within 10 days after Lessor gives Lessee notice thereof.

(4) Lessor's giving Lessee 3 notices pursuant to one or more of Paragraphs 20.A.1, 20.A.2 and 20.A.3 hereof within any consecutive 12 month period.

(5) The filing by or against Lessee of a petition under the federal Bankruptcy Act or any amendment thereto or under any other insolvency law or law providing for the relief of debtors; the making by Lessee of any general assignment for the benefit of creditors; the appointment of a receiver or trustee for Lessee or for any of Lessee's assets; the institution by or against Lessee of any other type of insolvency proceeding (under the Bankruptcy Act or otherwise) or for any formal or informal proceeding for the dissolution, liquidation, settlement of claims against, or winding up of the affairs of Lessee; the making by Lessee of a transfer of all or a material portion of Lessee's assets or inventory not in the ordinary course of business; the admission or declaration by Lessee of inability to pay debts as they come due; the filing by or against Lessee of a petition for bankruptcy, reorganization, or any kind of arrangement under the Bankruptcy Act or any similar statute which remains for 60 days undismissed.

(6) The occurrence of any event described in Paragraph 20.A.5 hereof with respect to any guarantor or any other party liable for payment or performance of this Lease.

(7) If any certificate, statement, representation, warranty, or audit heretofore or hereafter furnished

by or on behalf of Lessee or any guarantor or other party liable for payment or performance of this Lease proves to have been false in any material respect at the time as of which the facts therein set forth were stated or certified or has omitted any substantial contingent or unliquidated liability or claim against Lessee or any such guarantor or other party.

(b) Remedies.  Upon the occurrence of an Event of Default, Lessor may, without demand or notice of any kind, exercise one or more of the following remedies, as Lessor, in its sole discretion, lawfully elects:

(1) Proceed by court action, either at law or in equity, to enforce performance by Lessee of this Lease or to recover damages for the breach thereof, including but not limited to recovering all Rents, additional Rents, and other payments then accrued with respect to the applicable Schedule.

(2) Terminate the applicable Schedule, whereupon all rights of Lessee in the Equipment subject to said Schedule will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee, if so requested, will at its expense promptly return the Equipment to Lessor at the place designated by Lessor within the Continental United States and in the condition required pursuant to the terms hereof, or Lessor, at is option, may enter the premises where the Equipment is located and take immediate possession of and remove the same in a lawful manner.  Lessee will, without further demand, forthwith pay Lessor an amount equal to any past due Rent and additional Rent which was due and payable for all periods up to and including the Rent payment date following the date on which Lessor has declared the Schedule to be in default, plus, as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the present value of the Rent which would otherwise have accrued from such Rent payment date to the end of the term of the applicable Schedule ("Default Value").  Such present value shall be computed utilizing a rate of 5% per annum.  Following the return of the Equipment to Lessor pursuant to this clause (2), Lessor will proceed to sell or re-lease the Equipment in a commercially reasonable manner.  The proceeds of such sale or re-lease will be applied by Lessor (A) first, to pay all costs and expenses, including reasonable legal fees and disbursements, incurred by Lessor as a result of the default and the exercise of its remedies with respect thereto, (B) second, to pay Lessor an amount equal to any unpaid past due Rent due and payable plus the Default Value, to the extent not previously paid by Lessee, and (C) third, to reimburse Lessee for the Default Value to the extent

(i) the Default Value has been previously paid as liquidated damages and

(ii) such proceeds are attributable or allocated to the period commencing on the Rent payment date following the date on which the Lessor has declared the Schedule to be in default and ending on the date the applicable Schedule would have terminated if Lessee had not defaulted.  Any surplus remaining thereafter will be retained by Lessor.  To the extent Lessee has not paid Lessor the amounts specified in this clause (2), Lessee will forthwith pay such amounts to Lessor plus interest provided in Paragraph 5(c) on such amounts, computed from the date the Default Value is payable hereunder until such amounts are paid.

(3) Pursue any other remedy at law or in equity.

Notwithstanding any said repossession or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of Lessee to be performed under this Lease.  Lessee hereby waives any requirement of law, now or hereafter in effect, which might limit or modify any of the remedies herein provided, to the extent that such waiver is permitted by law.

(c) Lessor's Expenses.  Lessee shall pay Lessor all costs and expenses, including attorney's fees, incurred by Lessor in exercising any of its rights or remedies hereunder or enforcing any of the terms, conditions, or provisions hereof.

## 21.  ASSIGNMENT

(a) BY LESSEE PROHIBITED. WITHOUT PRIOR WRITTEN CONSENT OF LESSOR, LESSEE SHALL NOT ASSIGN, PLEDGE, HYPOTHECATE, OR OTHERWISE TRANSFER THIS LEASE, ANY ITEM OF EQUIPMENT, OR ANY INTEREST IN THIS LEASE OR THE EQUIPMENT OR PERMIT ITS RIGHTS

OR INTERESTS UNDER THIS LEASE TO BE SUBJECT TO ANY LIEN, CHARGE, OR ENCUMBRANCE OF ANY NATURE. Lessee's interest herein is not assignable and shall not be assigned or transferred by operation of law. Any assignment, pledge, hypothecation, sublease or other transfer for which consent is required hereby and which is made without such consent shall be void and not effective. Lessor's consent to any of the foregoing prohibited acts applies only in the given instance and is not a consent to any subsequent like act by Lessee or any other person. Subject to the foregoing, this Lease inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors, and assigns of the parties hereto.

(b) By Lessor Permitted. All rights of Lessor hereunder or to the Equipment may be sold, assigned, pledged, mortgaged, or otherwise transferred, either in whole or in part, without notice to Lessee but always, however, subject to the rights of Lessee under this Lease. If Lessor sells the Equipment or assigns this Lease or the Rent due or to become due hereunder or any other interest herein, whether as security for any of its indebtedness or otherwise, no breach or default by Lessor hereunder or pursuant to any other agreement between Lessor and Lessee, should there be one, shall excuse performance by Lessee of any provision hereof. No such vendee or assignee shall be obligated to perform any duty, covenant, or condition required to be performed by Lessor under the terms of this Lease. Lessee acknowledges that any assignment or transfer by Lessor permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease, or materially increase the burdens or risks imposed upon Lessee.

22.  OWNERSHIP
The Equipment is, and shall at all times be and remain, the sole and exclusive property of Lessor or its vendees or assignees, and Lessee shall have no right, title, or interest therein or thereto except as expressly set forth in this Lease. Lessee shall keep the Equipment free and clear of all liens, encumbrances, and charges of any nature imposed or asserted by persons claiming, by, through, or under Lessee.

23.  PERSONAL PROPERTY
The Equipment is, and shall at all times be and remain, personal property, notwithstanding that the Equipment or any Item or part hereof may now be, or hereafter become, in any manner affixed or attached to, or imbedded in, or permanently resting upon, real property or any building thereof, or attached in any manner to what is permanent as by means of cement, plaster, nails, bolts, screws, or otherwise. If requested by Lessor prior to or at any time during the term hereof with respect to any Item of Equipment, Lessee will obtain and deliver to Lessor waivers of interest or liens and rights to access for the purpose of enforcing Lessor's rights hereunder, and in recordable form and, satisfactory to Lessor, from all persons claiming any interest in the real property on which such Item is installed or located.

24.  NET LEASE; OFFSET
This Lease is a net lease, and Lessee shall not be entitled to any abatement of Rent or other payments due hereunder or any reduction thereof under any circumstances or for any reason whatsoever. Lessee hereby waives any right to offset existing and future claims against any Rent or other payments due hereunder and agrees to pay the Rent and other amounts due hereunder regardless of any claim which may be asserted by Lessee or in its behalf. The Lease shall not terminate, and the respective obligations of Lessor or Lessee be otherwise affected, by reason of any defect in or damage to or loss or destruction of all or any Item of Equipment from whatever cause, the prohibition of Lessee's use of the Equipment or any Item thereof, the interference with such use by any government, person or corporation, the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease, any lack of right, power, or authority of Lessor or Lessee to enter into this Lease, or any other cause whether similar or dissimilar to the foregoing.

25.  FINANCIAL AND OTHER COVENANTS
(a)  Lessee hereby represents, warrants, and agrees as follows:

        (1) If Lessee is a corporation, it has been duly organized and is validly existing under the laws of the state of its incorporation and is duly qualified, licensed, and in good standing in all jurisdictions in which qualification and licensing is necessary to enter into and perform Lessee's obligations under this Lease.

        (2) The execution and delivery of this Master Lease Agreement, the Schedules, and all documents entered into in connection with this Master Lease Agreement and the Schedules have been duly authorized by all necessary corporate or other action and do not

require the consent, approval, or withholding of objection by any person, party, or governmental agency and this Lease and such other documents constitute the legal, valid, and binding obligations of Lessee enforceable against Lessee in accordance with their respective terms.

        (3) The execution of this Master Lease Agreement and the Schedules by Lessee and the performance thereof do not violate any agreement to which Lessee is a party to or by which it is bound or affected.

        (4) All financial and other information furnished by Lessee is true and correct as of the date of submission thereof and, as of the date hereof or any subsequent date on which Lessee shall execute a Schedule hereto, there has not been or shall not have occurred any adverse change in such information or the financial condition of Lessee since the date of such submission.

        (5) At the Lessor's request deliver to it:
            (a)  As soon as available but in no event more than 120 days after issuance copies of all notices, reports, and other materials containing financial information relative to Lessee which are distributed publicly or required to be filed or provided to any governmental agency.

            (b)  Such other reports and information as Lessor may reasonably require concerning the Equipment including, without limitation, the status of its maintenance, use, and condition, the financial condition of Lessee, and the compliance by Lessee with the terms and conditions of this Lease.

The foregoing representations, warranties, and agreements shall continue throughout the term of this Lease, except as otherwise provided herein.

(b) Upon request by Lessor, Lessee shall furnish to Lessor such documents and opinions as Lessor may from time to time reasonably request including, but not limited to, certificates of the resolutions adopted by Lessee in connection with Lessee's entering into and performing under this Lease and authorizing the persons executing this Lease to do so on behalf of Lessee, a certificate of good standing issued by the Secretary of State or other appropriate authority of the state of Lessee's incorporation or registration as a limited partnership or other applicable business entity and by the state in which any Item of Equipment shall be located, and opinion letters from Lessee's counsel with respect to such matters as Lessor reasonably requests.

(c) To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a lessee by section 2A-508 through 2A-522 of the UCC, including, but not limited to, Lessee's rights to: (i) cancel or repudiate the Agreement; (ii) reject the Equipment or revoke acceptance of the Equipment; (iii) a security interest in the Equipment in Lessee's possession or control for any reason; (iv) specific performance, replevin, detinue, sequestration, claim, and delivery of the like for the Equipment identified to the Agreement. To the extent permitted by applicable law, Lessee also hereby waives any right now or hereafter conferred by status or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages hereunder or which may otherwise limit or modify any of Lessor's rights or remedies hereunder.

26.  ADDITIONAL DOCUMENTS
(a)  Perfection of Security Interest. Lessee hereby authorizes Lessor and gives to Lessor its power of attorney to file in Lessee's name, financing statements (and any appropriate amendments thereto), under the provisions of the Amended Uniform Commercial Code, Revised Article 9, with respect to this Agreement and any Schedules entered into hereunder and as Lessor shall deem necessary or desirable to protect title and/or a security interest.

(b) Estoppel Certificates. Lessee will furnish Lessor from time to time upon Lessor's request therefore with letters and certificates ("Estoppel Certificates") in such form, and addressed to such persons, as Lessor designates, certifying such information with respect to the Equipment or this Lease as Lessor shall designate (or, to the extent that certification cannot be made, stating the reasons therefore) including, but not necessarily limited to, the following:

        (1) That this Lease is in full force and effect.

        (2) That Lessor is not in default of any obligation owed to Lessee under the terms of this Lease.

(3) The address or addresses at which the Equipment or designated Items thereof are located.

(4) That the Equipment is in good working order and condition.

(5) That Lessee is current in its obligation to pay Rent and has not prepaid any Rent.

(c) Other Documents. Lessee shall execute and deliver to Lessor, duly acknowledged and in recordable form if so requested, any other document reasonably requested by Lessor.

(d) Power of Attorney. Lessee hereby authorizes Lessor and gives Lessor its power of attorney to execute in Lessee's name, where permitted by law, documents as provided in this Paragraph 26.

27. NON-WAIVER
No covenant or condition of this Lease can be waived except by written consent of Lessor. Forbearance or indulgence by Lessor in any regard whatever shall not constitute a waiver of the covenant or condition to be performed by Lessee to which the same may apply, and, until complete performance by Lessee of said covenant or condition, Lessor shall be entitled to invoke any remedy available to Lessor under this Lease or by law or in equity despite said forbearance or indulgence.

28. NOTICES
Any notice required herein or under law shall be in writing. Service of all notices under this Lease shall be sufficient if given personally, by overnight courier, electronic transmission or mailed to a party at its respective address set forth in this document or at such address as such party may provide in writing from time to time. Any notice mailed to a party is given 3 days after the same is deposited in the United States mail, duly addressed, with postage prepaid.

29. MISCELLANEOUS
(a) This Master Lease Agreement, the Schedules, and the exhibits and riders to this Master Lease Agreement and to the Schedules constitute the entire agreement between Lessor and Lessee.

(b) This Lease shall not be amended, altered, or changed except by a written agreement signed by the parties hereto.

(c) Whenever the context of this Lease requires, the masculine gender includes the feminine or neuter and the singular number includes the plural.

(d) Whenever the word "Lessor" is used herein, it shall include all assignees of Lessor.

(e) If there is more than one Lessee named in this Lease, the liability of each shall be joint and several.

(f) Titles to Paragraphs of this Master Lease Agreement are solely for the convenience of the parties and are not an aid in the interpretation of this Master Lease Agreement.

(g) Time is of the essence of this Lease and each and all of its provisions.

(h) This Lease shall be governed by and construed in accordance with the law of the State of Illinois. Lessee hereby submits to the jurisdiction of the state and federal courts located in Illinois.

(i) Lessee's obligations and liabilities hereunder shall not be affected by, and shall survive, the expiration or sooner termination of this Lease.

(j) If this Lease or any provision hereof shall be deemed invalid, illegal or unenforceable in any respect or in any jurisdiction, the validity, legality and enforceability of this Lease in other respects and in other jurisdictions shall not be in any way impaired or affected thereby.

(k) With respect to any Schedule hereto, the following shall apply: (i) there shall be a single executed original of each Schedule marked "Original"; (ii) all other counterparts of such Schedule shall be marked "Duplicate"; (iii) to the extent, if any, that any such Schedule constitutes chattel paper, no security interest therein may be created through the transfer or possession of any Duplicate of such Schedule, but such security interest may be created through the transfer or possession of the Original of such Schedule together with a certified copy of this Master Lease Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Lease on or as of the day and year first above written.

LESSOR:
LASALLE SYSTEMS LEASING, INC.

By: _____

Name: _____ Robert J. Metzen _____

Title: _____ President _____

Date: _____ April 18, 2007 _____

LESSEE:
BEST WEST MOTEL, INC. D/B/A COMFORT INN AIRPORT AT OLD TOWN

By: _____

Name: _____

Title: _C-M_____

Date: _4-27-07_____

# EXHIBIT B

**ORIGINAL**

LESSEE: Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town

SCHEDULE: #001

MASTER LEASE DATE: April 18, 2007

MASTER LEASE: #693

This Schedule is hereby attached to and made a part of the Master Lease Agreement bearing date as set forth above, between LaSalle Systems Leasing, Inc. and the Lessee named above.

This Equipment Schedule ("Lease") constitutes a separate Lease which incorporates the terms of the Master Lease Agreement. The executed Lease ("Equipment Schedule") marked "Original" shall be the original of the Lease for the Equipment described on such Lease. All other executed counterparts of the Lease shall be marked "Duplicate". To the extent that the Lease constitutes chattel paper, as such term is defined in the Uniform Commercial Code of the applicable jurisdiction, no security interest in the Lease may be created through the transfer of possession of any counterpart other than the "Original" of the Lease.

SCHEDULE AGREEMENT DATE: July 1, 2007

SCHEDULE COMMENCEMENT DATE: July 1, 2007

The lease term shall begin on the Schedule Commencement Date. To the extent that the Equipment is accepted prior to that date, the Lessee shall pay to the Lessor an interim rental representing a proration on a per diem basis of the initial monthly rental.

EQUIPMENT: SEE ATTACHMENT

MINIMUM LEASE TERM AND RENTAL PAYMENTS: Term 48 Months payable monthly on the first day of the month. The amount of each payment is $6,555.00.

LOCATION OF EQUIPMENT: 1955 SAN DIEGO AVENUE, SAN DIEGO, CA 92110

ADDITIONAL PROVISIONS TO SCHEDULE:

RIDER A - STIPULATED LOSS VALUE: The Stipulated Loss Value of the Unit(s) of the Equipment covered by the Equipment Lease Agreement identified above (hereinafter called the Agreement), as of any date, shall be the amount equal to the product of (i) the original cost of such Unit(s) which is $252,929.57 and (ii) the percentage indicated below opposite the period of time in which such occurs. Values for those periods between the ones indicated below can be calculated through interpolation of nearest values.

| YEARLY PERIOD | PERCENTAGE |
|---|---|
| 1 | 110 |
| 2 | 90 |
| 3 | 75 |
| 4 | 60 |
| 5 | 45 |

After the fifth year of the term of lease for such Unit(s), and until such Unit(s) have been surrendered to Lessor, as provided in the Agreement, the Stipulated Loss Value of such Unit(s) shall be 40% of the original cost thereof.

CERTIFICATE OF ACCEPTANCE: Lessee hereby certifies (i) that the Items of Equipment described above have been delivered to the location of Lessee described in the Lease, have been inspected by authorized representatives of Lessee, have been duly and finally accepted by Lessee under the Lease and have been found to be in good repair, condition and working order and to be the Equipment described in Schedule #001 (ii) that the installation date was _____ June 1, 2007

LaSalle Systems Leasing, Inc.

(Lessor)

By: _____

Title:   Robert J. Metzen, President

Date:   July 1, 2007

Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town

(Lessee)

By: _____

Title:   Aida Selfani, General Manager

Date:   7/01/07

July 1, 2007

ORIGINAL

Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town
1955 San Diego Avenue
Sane Diego, Ca 92110

Re: Equipment Schedule No. 001 date July 1, 2007 (the "Lease") to Master Lease Agreement #693 dated April 18, 2007 (the "Agreement") between LaSalle Systems Leasing, Inc. as lessor ("Lessor") and Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town as lessee (the "Lessee"). Equipment Leased: See attachment, commencement Date of Lease: July 1, 2007

Gentlemen:

Notice is hereby given that the Lessor has collaterally assigned and granted a security interest in, the Lease and all rents and other sums due and to become due thereunder, and the equipment leased thereunder ("Equipment") to MB Financial Bank, N.A., Attn: Leasing Department 7th Floor, 6111 N. River Road, Rosemont, IL 60018 ("Lender"), as security for a loan made or to be made by Lender to Lessor.

Lessee is hereby directed, and by signature below, consents to such assignment and grant of security interest to Lender, and commencing October 1, 2007 (the "Rent Assignment Date") agrees to pay directly to Lender at its address shown above, until Lender instructs Lessee otherwise in writing, all rents and other payments including, without limitation, all rentals, stipulated loss value payments, accelerated payments upon default, casualty and insurance loss payment, termination payments, applicable late charges, attorneys' fees and expenses of collection and enforcement of the Lease, and all other sums due and to become due under the Lease (collectively, the "Payments").

Lessee, by signature below, certifies and confirms to Lender, and agrees as follows:

1. As of the Rent Assignment Date, the following rents remain due under the Lease and Lessee agrees to pay all such rents directly to Lender on their respective due dates: 45 equal monthly rent payments of $6,555.00 each, commencing on October 1, 2007 and continuing on the first day of each month thereafter, ending with the payment due on June 1, 2011.

2. That the aforesaid rentals are the firm, fixed rentals due under the Lease and are not subject to any adjustment.

3. That Lessee's obligation to make the Payments to Lender is absolute and unconditional, and Lessee will pay directly to lender all Payments without regard to, and shall not assert against Lender, any claim, defense, counter claim, recoupment, setoff or right to cancel or terminate the Lease which Lessee may have against Lessor or any other party. Nothing herein shall be deemed to relieve Lessor of any of its obligations to Lessee under the Lease.

4. That the Equipment is in Lessee's possession at the address specified in the Lease, and that the Equipment has been fully and finally accepted by duly authorized representatives of Lessee as the Equipment under the Lease.

5. Lessee warrants and represents to the Lender that true and complete copies of the Lease and Agreement are attached hereto as Exhibit A, and that they represent the sole agreements between Lessor and Lessee respecting the Equipment, the rentals and all other payments due and to become due under the Lease.

6. That the Lease is in full force and effect, that Lessee will not modify or consent to any modification of the terms of the Lease without prior written consent of Lender, and that any such modification shall be ineffective without Lender's prior written consent, which shall not be unreasonably withheld.

7. That neither Lessee nor, to Lessee's knowledge, Lessor, has breached the Lease in any respect and that all Payments due under the Lease have been and will continue to be paid in strict accordance with the terms of the Lease.

8. That all representations and duties of Lessor intended to induce Lessee to enter in the Lease whether required by the Lease or otherwise have been fulfilled.

9. Lessee acknowledges that Lender has not assumed, nor shall it be responsible for the performance of, any of the obligations, of Lessor, or any other party under the terms of the Lease.

10. That Lessee has received no notice of a prior sale, transfer, assignment, hypothecation or pledge of the Lease, the Payments, or the Equipment.

11. Lessee confirms to Lender that no sublease, assignment or transfer by Lessee shall in any manner impair, diminish or relieve the Lessee of its primary obligations under the Lease, including its obligation to make all Payments directly to Lender, the terms of the Lease notwithstanding.

12. Lessee agrees that Lender is entitled to the benefits of each and every right accorded Lessor in the Lease, including, without limitation, remedies, inspection, rights, indemnity rights, right to give consent, right to receive casualty payments and payment of costs and expenses incurred in exercising rights and remedies under the Lease, and the right to receive notices and other documents required to be furnished under the Lease.

13. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a lessee by section 2A-508 through 2A-522 of the UCC, including, but not limited to, Lessee's rights to: (i) cancel or repudiate the Agreement; (ii) reject the Equipment or revoke acceptance of the Equipment; (iii) a security interest in the Equipment in Lessee's possession or control for any reason; (iv) specific performance, replevin, detinue, sequestration, claim, and delivery of the like for the Equipment identified to the Agreement. To the extent permitted by applicable law, Lessee also hereby waives any right now or hereafter conferred by status or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages hereunder or which may otherwise limit or modify any of Lessor's rights or remedies hereunder.

14. Lessee acknowledges and confirms that the Lease was executed in duplicate, and Lessee further acknowledges notice from Lessor that the Lender has received the executed "Original" of the Lease, constituting "chattel paper" under the Uniform Commercial Code and sufficient to transfer the Lessor's rights in the Lease and Payments.

LASALLE SYSTEMS LEASING, INC.
LESSOR

BY:

TITLE:        Robert J. Metzen, President


Lessee hereby acknowledges and certifies that the above-described terms, conditions and representations are accurate and true, that the Lessee will make the Payments herein stipulated directly to Lender, and that it is duly authorized and empowered to execute and deliver this Notice of Assignment Letter. Lessee further acknowledges that the Lender is relying on this Notice of Assignment Letter in agreeing to discount for Lessor the remaining rents payable under the Lease.

BEST REST MOTEL, INC. D/B/A
COMFORT INN AIRPORT AT OLD TOWN
LESSEE

BY:

TITLE: Aida Selfani, General Manager


ACKNOWLEDGED:

MB FINANCIAL BANK, N.A.
LENDER

BY:

TITLE:   VP NW Leasing Division

EQUIPMENT ATTACHMENT TO SCHEDULE #001 MASTER LEASE #693
BETWEEN
BEST REST MOTEL, INC. D/B/A CONFORT INN AIRPORT AT OLD TOWN (LESSEE)
AND
LASALLE SYSTEMS LEASING, INC. (LESSOR)

| Vendor | Qty | Part# | Manuf | Model | Description | Serial Number |
|--------|-----|-------|-------|-------|-------------|---------------|
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8F3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9F3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | CF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | FF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | HF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JF3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 7G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9G3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BG3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | CG3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DG3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GG3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JG3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1H3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3H3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4H3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 7H3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BH3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DH3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GH3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1H3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2J3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4J3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6J3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BJ3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DJ3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GJ3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JJ3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2K3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4K3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6K3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9K3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BK3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DK3ZWC1 |

| Vendor | Qty | Part# | Manuf | Model | Description | Serial Number |
|---|---|---|---|---|---|---|
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GK32WC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JK32WC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2L32WC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4L32WC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5L32WC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | F4WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | H4WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | J4WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 15WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 25WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 35WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 55WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 65WYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1GWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5GWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9GWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DGWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | HGWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2HWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3HWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9HWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BHWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1JWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5JWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 7JWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BJWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GJWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2KWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6KWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BNWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GNWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JNWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5PWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8TWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BTWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DTWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GTWYWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BKY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DKY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | FKY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GKY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | HKY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2LY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3LY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5LY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6LY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8LY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9LY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BLY1XC1 |

| Vendor | Qty | Part# | Manuf | Model | Description | Serial Number |
|---|---|---|---|---|---|---|
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DLY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | GLY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | HLY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JKY1XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9C8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BC8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | HC8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6D8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8D8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BD8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | CD8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JD8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1F8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3F8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4F8ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5F8ZWC1 |
| DELL | 85 | A0367306 | DELL | | 7-OUTLET 120 V ESSENTIAL SURGE ARREST SURGE SUPPRESSOR | |
| DELL | 125 | A1151524 | DELL | | TILT HOOK WALL MOUNT FOR LG32LP LX | |
| DELL | 126 | A0108174 | DELL | | PRO SERIES VGA MONITOR SIGNAL REPLACEMENT CABLE - 10 FT | |
| DELL | 126 | A045I933 | DELL | | 12FT MINI STEREO CABLE - 3.5MM | |
| DELL | 1 | A0584796 | DELL | | SVGA GOLD MONITOR REPLACEMENT CABLE - 25 FT | |
| DELL | 1 | 310-3920 | DELL | | USB PRINTER CABLE - 10 FT BLACK | |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | JNV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1PV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3PV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 4PV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6PV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 7PV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8PV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | FPV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | HPV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 1QV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 2QV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 3QV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 5QV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 6QV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 8QV0XC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | BQV0XC1 |
| DELL | 16 | 310-8217 | DELL | | WALL/UNDER-DESK INSTALL BRACKET | |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | DN3ZWC1 |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | FN3ZWC1 |
| DELL | 2 | 310-8217 | DELL | | WALL/UNDER-DESK INSTALL BRACKET | |
| DELL | 1 | 222-5929 | DELL | OPTIPLEX 745 | SFF/PD 820/2.8GHZ/2X1M/1.0GB/80GB/24X24CDRW-DVD/WINXPP | 9NTYWC1 |
| DELL | 1 | 320-4962 | DELL | E157FP | 15" FLAT PANEL MONITOR | |
| DELL | 1 | 310-8217 | DELL | | WALL/UNDER-DESK INSTALL BRACKET | |
| DELL | 125 | A1152891 | DELL | CS-INNNETWORK | 32" HDTV MONITOR PRO IDIOM | |

| Vendor | Qty | Part# | Manuf. | Model | Description | Serial Number |
|--------|-----|-------|--------|-------|-------------|---------------|
| DELL | 125 | A0692136 | DELL | CS-INNNETWORK-WLS | USB ADAPT 802.11G | |
| DELL | 40 | A1139050 | DELL | CS-INNNETWORK-SCROLL | OPT 3BTN MOUSE WLS-W HOT KEY KEYBOARD | |
| DELL | 1 | 222-6486 | DELL | | PHOTO ALL-IN-ONE PRINTER 966 | CW5SG91 |
| DELL | 5 | A1139050 | DELL | CS-INNNETWORK-SCROLL | OPT 3BTN MOUSE WLS-W HOT KEY KEYBOARD | |
| DELL | 1 | 986-4268 | DELL | | MANAGED DEPLOYMENT, SEGMENT INSTALLATION, RETAIL | |
| DELL | 1 | 986-4277 | DELL | | MANAGED DEPLOYMENT, DMS PROJECT MANAGEMENT, RETAIL | |
| DELL | 1 | A0459500 | DELL | | EOS DIGITAL REBEL XT SILVER 8.0MP DIGITAL SLR CAMERA WITH 18-55 MM LENS | |
| AIT | | | | | FREIGHT & FUEL SURCHARGES | |
| InnNetwork | 115 | | LOGIX | NETSTOP 5.0 | SOFTWARE LICENSES/REGISTRATION NUMBERS | |

# EXHIBIT C



**LaSalle Solutions**

By Federal Express

April 3, 1008

Mr. Victor Salem
Owner
Best Rest Motel, Inc.
d/b/a Comfort Inn Airport at Old Town
1955 San Diego Avenue
San Diego, CA 92110

Dear Victor:

Pursuant to Paragraph 20(a)(i) of the Master Lease Agreement #693 dated April 18, 2007 ("Master Lease") between LaSalle Systems Leasing, Inc. as Lessor and Best Rest Motel, Inc. d/b/a Comfort Inn Airport at Old Town as Lessee, Lessor is providing Lessee notice of its failure to pay rent in accordance with the executed Master Lease and Lease Schedule #001 dated July 1, 2007. Said Lease Schedule together with the terms of the Master Lease incorporated therein are collectively referred to in this letter as the "Lease". Lessee has failed to pay Lessor four (4) monthly rental payments of $7,063.02 ($6,555.00 Monthly Rent plus $508.02 tax) each due under the Lease on January 1, 2008, February 1, 2008, March 1, 2008 and April 1, 2008, respectively. Currently a total of $28,252,08 is due and payable.
If Lessee fails to cure the payment default by paying $28,252.08 within ten (10) days from the giving of this notice, Lessor will pursue remedies afforded it under the Lease.

Please contact me if you have any questions. We look forward to you curing the default.

Sincerely,

Robert J. Metzen
President

RJM:kh